

Houston Goddard
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for Michael Thomas Van Dyke

# United States District Court
## Eastern District of Washington
Hon. Wm. Fremming Nielsen

| | |
|---|---|
| United States, | No. 2:15-cr-25-WFN |
| Plaintiff, | Supervised Release Brief |
| v. | |
| Michael Thomas Van Dyke, | |
| Defendant. | |

In September 2020, Michael Van Dyke appeared before the Court and admitted to violating his supervised release conditions by (1) failing to report to the RRC, (2) absconding, and (3) changing his address without authorization.[1] The Court made no findings and allowed Mr. Van Dyke to continue on supervision.[2] Since that time, Mr. Van Dyke has continued to violate his conditions. He has (1) failed to follow his supervising Probation Officer (Amber Andrade)'s instructions, (2) possessed sexually-explicit material, (3) purchased a cell phone without notifying Officer Andrade, and (4) lied to Officer Andrade about that cell phone.[3] Mr. Van Dyke will admit these violations.[4]

This pattern of behavior is not new for Mr. Van Dyke. His supervision began in June 2018, and the very next month he violated his conditions by possessing a smart phone, accessing pornography, and lying to his Probation Officer.[5] The Honorable U.S.

---

[1] ECF Nos. 179, 185.
[2] ECF No. 185.
[3] ECF Nos. 200, 203.
[4] Mr. Van Dyke will deny the one remaining allegation: that he accessed the internet without the use of Covenant Eyes. ECF No. 203 (Alleged Violation #6). Following a prior violation, Officer Andrade had confiscated Mr. Van Dyke's cellular phone. She returned this phone to him on January 5, 2021—but the Covenant Eyes account had lapsed due to lack of payment while the phone had been confiscated. As Mr. Van Dyke recalls, he discussed this situation with Officer Andrade, who advised that he did not need to reactivate his Covenant Eyes account immediately because she could monitor his internet usage by checking his phone. After he and Officer Andrade discussed this matter again on February 8, 2021, Mr. Van Dyke re-installed Covenant Eyes.
[5] ECF Nos. 83.

District Judge Justin L. Quackenbush continued Mr. Van Dyke on supervision.[6] Less than two weeks later (in October 2018), Mr. Van Dyke again violated his condition by possessing a laptop computer, accessing pornography, and possessing marijuana.[7] Judge Quackenbush took Mr. Van Dyke's serious health issues into account and sentenced him to three months' incarceration while allowing him to self-report.[8]

Mr. Van Dyke served those three months and began a second term of supervision in March 2019. On the very day he reviewed and signed a copy of his revocation judgment, he violated his conditions by accessing the internet.[9] Judge Quackenbush took no action.[10] Four months later (in July 2019), Mr. Van Dyke violated his conditions by using marijuana and missing treatment sessions.[11] The next month (with his revocation hearing looming), he again used marijuana and again missed treatment sessions.[12] Mr. Van Dyke then appeared before this Court, and the Court granted him the opportunity to continue on supervision.[13] Less than three months later (in December 2019), Mr. Van Dyke again used marijuana.[14] This Court

---

[6] ECF No. 93.
[7] ECF No. 103.
[8] *Id.*
[9] ECF No. 107.
[10] *Id.*
[11] ECF No. 108.
[12] ECF No. 120.
[13] ECF No. 133.
[14] ECF No. 136.

again gave him an opportunity to continue on supervision.[15] Less than a month later, Mr. Van Dyke used marijuana and failed to report for drug testing.[16] About a week after that, he used marijuana, accessed the internet without authorization, and moved out his parents' home without informing his Probation Officer.[17] With ten violations pending, this Court revoked Mr. Van Dyke and sentenced him to six months' incarceration.[18]

Mr. Van Dyke served those six months and began his third (and current) term of supervision in August 2020. In less than seven months, he has again accumulated eight pending violations. The Court has been patient with Mr. Van Dyke throughout the course of his three terms of supervision—but his conduct demonstrates that he is unsupervisable. Counsel will ask that the Court impose sanction but not continue Mr. Van Dyke on supervision.

The Court may have concerns regarding terminating supervision given Mr. Van Dyke's underlying crime (travel with intent to engage in illicit sexual conduct). While Mr. Van Dyke has shown that he is not willing or able to follow the Court's orders, there has been no suggestion that he has accessed child pornography or been in any

---

[15] ECF No. 142.
[16] ECF No. 145.
[17] ECF No. 156.
[18] ECF No. 159.

contact with minors. Regardless of whether he is on federal supervision, Mr. Van Dyke is required to register as a sex offender.

Keeping Mr. Van Dyke on supervision would likely continue an endless cycling in and out of prison. Given Mr. Van Dyke's extremely poor health, this is a dangerous cycle. Mr. Van Dyke suffers from spina bifida and, when incarcerated, develops serious pressure sores that can result in life-threatening infections.[19] (In the past, such infections have led to Mr. Van Dyke having both hips removed.[20]) To prevent against infection, Mr. Van Dyke must "maintain excellent hygiene" by showering several times each day (using a shower bench and handheld shower head) and frequently changing his diapers—which is impossible at most correctional facilities (including the Spokane County Jail).[21]

As the Court may recall, Mr. Van Dyke developed bed sores the last time he was at Spokane County Jail and continued to struggle with them at the Spokane Residential Re-Entry Center (RRC). While at the RRC, Mr. Van Dyke contracted spinal meningitis and was hospitalized. He then moved from the hospital to Franklin Hills Health & Rehabilitation to recuperate. While at Franklin Hills, he contracted COVID-19. Mr. Van Dyke is in extremely poor health, and a return to custody risks exacerbating his

---

[19] ECF No. 68 at ¶ 97. Mr. Van Dyke's spina bifida has also rendered him unable to engage in sexual activity. *Id.* at ¶ 104.
[20] *Id.* at ¶ 101.
[21] *Id.* at ¶ 100.

bed sores (which have yet to fully heal) and opening the door to a life-threatening infection.

The defense will therefore ask that Mr. Van Dyke's sanction involve placement at the RRC rather than in custody. At the RRC, he will be under constant surveillance—and he would be permitted to purchase his own mattress to address his bed sores.[22] Alternatively, should the Court determine custody is appropriate, the defense will ask the Court to request placement at the Nevada Southern Detention Center (NSDC) and to allow Mr. Van Dyke to self-report. Mr. Van Dyke has previously served time at the NSDC and has found it to be the correctional facility most accommodating of his medical needs.

Dated: February 28, 2021

                                      Federal Defenders of Eastern Washington & Idaho
                                      Attorneys for Michael Thomas Van Dyke

                                      <u>s/ J. Houston Goddard</u>
                                      J. Houston Goddard, NY #4545851

---

[22] Mr. Van Dyke was given this option previously but declined because he did not believe he would be at the RRC very long. He would purchase a mattress were he returned there now, knowing he would be there for an extended period.

## Service Certificate

I certify that on February 28, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorney James A. Goeke.

s/ J. Houston Goddard
J. Houston Goddard, NY #4545851
